**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
Renata Kociubinski, Penina Ben-Yosef Yelena Mitrofanova, and Jawwad Butt,

                    *Plaintiffs*,

      - *against* -

NYC Health and Hospital Corp. (d/b/a Coney Island Hospital)


                    *Defendants*.
---------------------------------------------------------------X

Case No.: 1:22-cv-00520-MKV

Hon. Eric N. Vitaliano, U.S.D.J.


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND, FOURTH AND FIFTH CLAIMS


**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Plaintiffs*

Dated: New York, New York
        September 7, 2023

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .................................................................................................... ii

**PRELIMINARY STATEMENT** .............................................................................................. 1

**RELEVANT FACTUAL BACKGROUND**............................................................................. 3

    I.    The Filing of the Collective Action Complaint ................................................................. 3

        A.  "On-Call" Shifts ............................................................................................................ 3

        B.  "Overtime" Shifts ......................................................................................................... 3

        C.  Hospital Records Regarding "On-Call" and "Overtime" Shifts ................................. 4

        D.  Nurses are Not Being Fully and Fairly Compensated for their "On-Call" and "Overtime" Shifts........................................................................................................... 4

**RELEVANT PROCEDURAL BACKGROUND**.................................................................... 10

        A.  The Filing of the Summons and Complaint .............................................................. 10

        B.  Defendants' Contemplated Motion to Dismiss .......................................................... 10

**LEGAL STANDARD** ............................................................................................................. 11

    I.    Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) .............................................................. 11

**ARGUMENT**............................................................................................................................ 11

    I.    Plaintiffs' Second and Fourth Claims are Sufficiently Pled ........................................... 11

    II.   Assuming, *Arguendo*, the Partial Motion to Dismiss is Granted, Plaintiffs Should be Granted Leave to Replead......................................................................................... 12

**CONCLUSION** ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)................................................................................................ 11

*Day v. Summit Sec. Servs. Inc.*,
　　53 Misc. 3d 1057 (N.Y. Sup. Ct. 2016) ............................................................... 12

*Humphreys v. New York City Health & Hosps. Corp.*,
　　2018 WL 3849836 (S.D.N.Y. 2018)................................................................... 12

*Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*,
　　2022 WL 667606 (S.D.N.Y. 2022)..................................................................... 11

*Snowbridge Advisors*,
　　2022 WL 667606 (S.D.N.Y. 2022)..................................................................... 11

**Statutes**

NYLL § 190(2)-(3) ............................................................................................................ 12

Plaintiffs Renata Kociubinski ("Kociubinski"), Penina Ben-Yosef ("Ben-Yosef") and Yelena Mitrofanova ("Mitrofanova"), and Jawwad Butt ("Butt", and collectively, the "Plaintiffs") by and through the undersigned counsel, respectfully submit this Memorandum of Law, in opposition to Defendant NYC Health and Hospital Corp.'s (d/b/a Coney Island Hospital) ("H+H", or the "Defendant") partial motion to dismiss Plaintiffs' second, fourth, and fifth claims in the Complaint filed on May 16, 2022 [Dckt. No. 1] (the "Complaint", or the "*Compl.*"), pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6) (the "Partial Motion to Dismiss"), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

Plaintiffs are four (4) of seven (7) nurses in the Catlab, Cardiology division of Defendant's medical services and care facility known as "Coney Island Hospital". To quote the old aphorism – numbers don't lie. That four (4) employees have banded together in this case is indicative of H+H's historical exploitative management.

Plaintiffs would regularly work "on-call"[1] and "overtime"[2] shifts, but never received their agreed-upon rate of pay for those hours. [*See* Compl. at ¶ 29]. Plaintiffs allege significant wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and Articles 6 and 19 of the New York State Labor Law ("NYLL"), for, *inter alia*, unpaid minimum wages, overtime compensation, and violations of the notice and record keeping requirements of the New York Wage Theft Prevention Act. [*Id*]. The Complaint alleges six (6) causes of action:

FIRST: Unpaid minimum wages under the FLSA;

SECOND: Unpaid minimum wages under the NYLL;

---

[1] When a nurse is "on-call"' or on "stand-by", they are expected to work on an as-needed, emergency basis, in response to being paged by the hospital. In order words, they are being engaged to wait during this period. [*Compl.* at ¶¶ 22-25].

[2] Nurses work an "overtime"' shift as soon as an emergency page is received. [*Id.* at ¶ 28].

1

      THIRD: Unpaid overtime wages under the FLSA;

      FOURTH: Unpaid overtime wages under the NYLL;

      FIFTH: Failure to provide wage notices under the NYLL; and

      SIXTH: Failure to provide wage statements under the NYLL.

[*Id*. at ¶¶ 40-66].

      H+H does not deny misappropriating Plaintiffs' wages, but rather principally argues that technical infirmities haven their corporate graft. Defendant argues that Plaintiffs' second[3] and fourth[4] claims should be dismissed because H+H is an exempt "political subdivision of the State of New York[,]" under NYLL ¶ 651(5).[5] H+H cannot take refuge in the law for its amoral business practices, however. Contrary to H+H's understanding, Plaintiffs' NYLL claims are not premised on NYLL § 651(5), but rather on the provisions contained in NYLL § 190 *et seq*. Of critical importance, § 190 does not provide an exemption for "political subdivisions" of the State of New York. (*Cf.* NYLL § 651(5) *with* NYLL § 190).

      H+H's liability is not questionable. Plaintiffs are a group of current employees who are intelligent and knowledgeable about their claims and can speak, with documentary support, about H+H's illegal payroll and timekeeping practices. H+H's Partial Motion to Dismiss is doomed to fail. Thus, H+H's requested relief results in the needless incurrence of attorneys' fees that are far better used in resolving a case where Plaintiffs have made substantive claims for underpayment, particularly where, as here, no realistic substantive defenses to the claims have been proffered during the litigation.

---

[3] *i.e.,* unpaid minimum wages under the NYLL. [*Compl.* at ¶¶ 44-47].
[4] *i.e.,* unpaid overtime wages under the NYLL. [*Id.* at ¶¶ 54-59].
[5] H+H also argues that Plaintiffs' fifth claim (for failure to provide wage notices under the NYLL) should be dismissed, to the extent that Plaintiffs were hired prior to 2001. [Partial Motion to Dismiss at pp. 3-4]. To the extent any Plaintiff was hired prior to 2011, those individuals are willing to stipulate to the dismissal of their wage notice claims.

**RELEVANT FACTUAL BACKGROUND**

I.     **The Filing of the Collective Action Complaint**

Coney Island Hospital is one of a small handful of designated Percutaneous Coronary Intervention ("PCI") Centers in New York City.[6] A PCI is a treatment procedure[7] for patients who are experiencing a heart attack or who may be in shock.

A. **"On-Call" Shifts**

As part of the hospital's PCI program, nurses in Coney Island's Catlab, Cardiology division are expected to work "on-call" and "overtime" shifts. [*Compl.* at ¶¶ 22, 27]. An "on-call" or "stand-by" shift requires a nurse to be within thirty (30) minutes of the hospital's vicinity. [*See* Dckt. No. 22 at § II(A)]. Nurses receive "on-call" shift pay as long as they are engaged to wait to be paged during this period. [*Id.*]. In addition to their regularly scheduled hours[8], nurses typically work "on-call" shifts, eleven (11) or twelve (12) hours per day, three (3) to five (5) days per week. [*Id.*].

Nurses receive a separate rate of pay for "on-call" shifts, which is commensurate with their level of experience. [*Id.*]. Generally, "on-call" shift rate is equal to half of a nurse's normal hourly rate of pay. [*Id.*].

B. **"Overtime" Shifts**

As soon as a nurse responds to an emergency page, and goes to the hospital, they receive an "overtime" shift. [*Compl.* at ¶ 27]. Whether the procedure takes one hour, or half-an-hour, an "overtime" shift pay guarantees a nurse a minimum of four (4) hours of overtime, equal to 1.5x their normal hourly rate of pay. [*Id.*].

---

[6] *See* https://www.health.ny.gov/statistics/diseases/cardiovascular/docs/pci_2016-2018.pdf at p. 76 (last accessed September 7, 2023).

[7] During the procedure, a catheter is threaded up to the site of the blockage in a coronary artery. *See id.* at p. 7 (last accessed January 27, 2023).

[8] Nurses are generally scheduled to work 150 hours / month, in order to receive "on-call" or "overtime" shifts. [*See* Dckt. No. 22 at § II(A)].

### C. Hospital Records Regarding "On-Call" and "Overtime" Shifts

On a monthly basis, the hospital's head nurse – Alena Oxten – is responsible for drafting a schedule for the Catlab's nursing staff. [*See* Dckt. No. 22 at § II(C)]. Nurses can request changes to be made, before this draft schedule is finalized and electronically inputted into the hospital's administrative recordkeeping system – Clarvia. [*Id*.].

Thus, the administrative recordkeeping system – Clarvia – contains a record of who is on standby, and who is not. [*Id*.]. As soon as a PCI procedure is initiated, *i.e.,* a page is responded to, the hospital creates a "Stemmy Log." [*Id*.]. This log contains a record of the procedure, including information on which nurses were assigned. [*Id*.]. Thus, the "Stemmy Logs" contain a record of which nurses were responding to a page, and thus, entitled to "overtime" shift pay. [*Id*.].

Despite the fact that the hospital was in possession of records reflecting their nurses "standby" and "overtime" hours worked, Defendant issued Plaintiffs pay stubs, which did not contain, *inter alia*, any indication of how Plaintiffs' stand-by or overtime pay was calculated. [*Id*.]; [*see also Compl.* at ¶¶ 33-35].

### D. Nurses are Not Being Fully and Fairly Compensated for their "On-Call" and "Overtime" Shifts

Beginning on or around September 2021, Plaintiffs noticed that they were not being fully compensated for their "on-call" shifts or "overtime" shifts. [*Compl.* at ¶ 29]. Plaintiff Butt took the initiative to raise this issue with the hospital's management, on behalf of his fellow nurses. [*See* Dckt. No. 22 at § II(D)]

#### i. The February 28, 2022 Meeting

On February 28, 2022, in Room 2W11, the hospital's management attended a meeting with Plaintiff Butt to discuss the issue regarding unpaid "on-call" and "overtime" shifts. [*See* Dckt. No. 22 at § II(D)(i)].

4

Alena Oxten, R.N., (head nurse), Darren Collington (Associate Executive Director), Patricia Copes (Assistant Director of Payroll), and Leonid "Lenny" Mericov, R.N., (Jawaad's supervisor), attending the meeting on behalf of the hospital's management. [*Id.*].

Plaintiff Butt attended the meeting on behalf of the nurses in the hospital's Catlab, Cardiology division. [*Id.*].

During the February 28, 2022 meeting, Jawaad remarked that he had realized that the hospital's automated system was not picking up time entries. They were either showing up "blank" or with a "9999" designation. [*Id.*].

In response, Patricia Copes, who had received multiple complaints regarding the issue by nursing staff – **before the February 28, 2022 meeting** – pulled up Jawaad's time sheets, mid-meeting. [*Id.*].

Upon review, Leonid "Lenny" Mericov, R.N. acknowledged the administrative issue. He consequently determined that a further meeting with the hospital's payroll and central office was necessary. [*Id.*].

  ii.  **The Hospital Management's Failure to Attend the March 31, 2022 Meeting**

Leonid "Lenny" Mericov, R.N. organized a meeting to be held on March 31, 2022, to addresses the payroll issue identified by Plaintiff Butt, at the February 28, 202 meeting. [*See* Dckt. No. 22 at § II(D)(ii)].

Inexplicably, the hospital's payroll and central office personnel[9] did not attend the March 31, 202 meeting. [*Id.*].

---

[9] *i.e.,* Patricia Copes (Assistant Director of Payroll) and Toni Louis (Director of Payroll).

5

Reasonably frustrated, over the following several months, the hospital's nurses continued to communicate their concerns over dozens of emails to hospital management. [*Id*.].

### iii. The May 17, 2022 Email

On May 17, 2022, Plaintiff Butt, emailed his supervisors, and the hospital's management, as follows, in pertinent part:

> "I have recently update[d] the payments on excel sheet based on the last three payments received on 04/15/2022, 04/29/2022 and **05/13/2022. The date in blue** is the check issued in which most of us have gotten some payment regarding this issue. We went and added all the payments to our excel sheet **(IN BLUE)** based on dates provided in details or "break down."
>
> It is still very VERY VERRY unclear how they are breaking down these payments and we still have not received our full owed amount. We also feel that the check should have been administered separately with a clear breakdown of what payments were made for which dates.
>
> **PS- FROM 04/03/2022-04/30/2022 NO ONE GOT PAID ANY [Stand-By] HOURS EXCEPT YELENA MITROFANOVA AND IT WAS NOT ANYWHERE REMOTELY NEAR THE TOTAL AMOUNT OWED TO HER FOR THAT PERIOD. SO I FEEL THE ISSUE IS CONTINUED !! ALSO PENINA DID NOT RECIEVE ANY COMPENSATION FROM MISSING [Stand-By] HOURS.** "

[*See* Dckt. No. 22 at § II(D)(iii)] (emphasis in original). A true and correct copy of the May 17, 2022 email was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-2].

In the May 17, 2022 email, Plaintiff Butt attached an excel spreadsheet reflecting: (i) "stand-by" and "overtime" shifts worked from approximately February 2021 and April 2022; and (ii) compensated received for "stand-by" and "overtime" shifts during this same time. [*See* Dckt. No. 22 at § II(D)(iii)]. A true and correct copy of the excel spreadsheet was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-3].

### iv. The May 26, 2022 Email

On May 26, 2022, Plaintiff Butt, emailed his supervisors, and the hospital's management, as follows, in pertinent part:

6

> Cath lab Nurses have not seen <u>complete compensation</u> for past hours missed yet and some of us have **not seen any previous balances** paid as of 05/26/2022. Please we **DO NOT WANT THIS ISSUE** to continue it makes it very difficult to want work for HHC. Please I need this issue to be resolved for good. We are being treated like a joke and it needs to stop. Thank you !

[*See* Dckt. No. 22 at § II(D)(iv)] (emphasis in original). A true and correct copy of the May 26, 2022 email was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-4].

### v.     The May 31, 2022 Email

On May 31, 2022, Plaintiff Butt, emailed his supervisors, and the hospital's management, as follows, in pertinent part:

> "I am representing the entire nursing staff of the Cath lab. It is unacceptable that no one has responded to any of my emails, ESPECIALLY finance and those in charge of payroll. I am bringing to your attention that we are still not receiving compensation for our hard work put in to keep this community STEMI center active. Two of the Nurses (Yelena Mitrofanova and Penina Ben-Yosef) have not been compensated at all for the money owed for the past hours that were entered into time sheets and further detailed in spread sheets provided for stand by and Overtime. In addition to that 3 weekends ago Ben-Yosef and Renata Kociubinski both were activated 5 times over one weekend and have not received any compensation for there time given to this establishment. I also noticed on my own time sheet 2202 and 2203 have errors and have not been processed because the FAULTY/MESSED UP system did not "PICK UP" my time entry and displays the message of "9999." According Mrs. Copes this means that the system is unable to comprehend a simple time entry and it is out of their hands. Please have this issue resolved or we will escalate further to dept. of labor and we already have contacted the Union and outside private lawyers.
>
> PS. WE WOULD LIKE A CLEAR CUT TANSPARENT BREAK DOWN OF PAYMENTS ON OUR CHECK BECAUSE WE DO NOT TRUST ANY OF THE PEOPLE PROCESSING OUR TIME SHEETS. We also deserve to have these owed balances on separate checks with CLEAR break down!!!!!!.
>
> **THIS IS A SERIOUS MATTER AND IT IS NOT BEING ADDRESSED AFTER MONTHS OF ATTEMPTS OF TRYING TO RESOLVE THE ISSUE."**

[*See* Dckt. No. 22 at § II(D)(v)] (emphasis in original). A true and correct copy of the May 31, 2022 email was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-5].

### vi. The June 2, 2022 Email

On June 2, 2022, Plaintiff Butt, emailed his supervisors, and the hospital's management, as follows:

> "I wanted to give my own example of what is a continuous issue with the payment of stand by and now Overtime as well. I received my last paycheck on 05/27/2022, in which I was paid $1,184.25 for stand by time "Ern End Date," of 04/30/2022 (which includes 04/03/2022 untill 04/30/2022). According to clarvia I did 190 hours of overtime and stand-by hours combined, out of which 28 hours were overtime hours. 190 hours total (overtime and stand-by) minus 28 hours overtime yields 162 hours of stand-by hours completed from 04/03/2022 until 04/30/2022.
>
> It is now **JUNE 2022** and I have only been paid for 50.75 hours of stand-by for the month of **APRIL 2022** at a stand-by rate of $23.33 per hour. STAND-BY should be paid **EVERY CHECK** it is not overtime. **Also OVERTIME HAS NOT BEEN PAID FOR THE MONTH of April 2022 at all**. It is now June 2022 and this has become a ridiculous situation and I am attaching my paystub with a "break down," which is not transparent at all. I also attached my clarvia hours of stand-by and overtime.
>
> This is just any example of the continued on going issue that is affecting all the staff nurses in the Cath lab. Please I request we have a meeting between administration, payroll, finance, medical and Nursing staff. We can not continue to work in such conditions it is unethical and it is abuse, it has been over 6 months we have been addressing this issue and it has not been resolved."

[*See* Dckt. No. 22 at § II(D)(vi)] (emphasis in original). True and correct copies of the June 2, 2022 email, with the referenced attachment, was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-6].

### vii. The June 3, 2022 Email

On June 3, 2022, Plaintiff Mitrofanova emailed her supervisors, and the hospital's management, as follows, in pertinent part:

> "My name is Yelena Mitrofanova and I am one of the nurses at Coney Island Hospital's Cardiac Cath Lab. It has been months and our nurses have not yet to receive a comprehensive explanation as to what happened to the payments that we are owed for Stand by and Overtime. We have not been adequately compensated for time worked by H+H. Furthermore, the paychecks that we do receive, are not transparent and are oftentimes confusing and we would like some clarity. We have

8

contacted Payroll Department of out hospital and Central office and to no avail and without any resolution of the matter. We would like abstain from filing a complaint with the NY Labor Department for the unpaid wages, and work this matter out internally. Please advise."

[*See* Dckt. No. 22 at § II(D)(vii)]. A true and correct copy of the June 3, 2022 email was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-7].

### viii.    The June 9, 2022 Email

On June 9, 2022, Plaintiff Ben-Yosef, emailed her supervisors, and the hospital's management, as follows, in pertinent part:

> "This is not the first, second, or third email sent from cath lab nursing staff members regarding this issue. We have sent multiple emails without receiving any response as we are continuously not being paid appropriately for our standby hours worked while working on call after hours. It is unethical to expect staff to continue working while not being paid without further detailed explanation and reasoning.
>
> …No one should be expected to work without being properly paid for the time invested. Please respond in a timely manner to set up a meeting with the cath lab nurses."

[*See* Dckt. No. 22 at § II(D)(viii)]. A true and correct copy of the June 9, 2022 email was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-8].

### ix.    The July 12, 2022 Email

On July 12, 2022, Plaintiff Mitrofanova, emailed her supervisors, and the hospital's management, as follows, in pertinent part:

> To who it may concern,
>
> Some of Cath lab staff RN's still have not been compensated for money owed to us by this institution. My colleague Penina Ben-Yosef sent out an email weeks ago with no response or corrective action from higher authorities to solve our situation. A meeting was promised to us by central office which was never held an no follow up. We have navigated through all of the appropriate roads to attempt to resolve this issue and still 6 months later we are begging for money owed to us for our work. In addition to Penina and I not getting any of the compensation owed to us, other staff members have not received the full amount of money which is owed to them as well. We are entitled to a full explanation according to the department of

9

labor. This is not ethical and is a matter that needs to be taken seriously. This is very discouraging as staff in this hospital.

We expect an answer."

[*See* Dckt. No. 22 at § II(D)(ix)]. A true and correct copy of the July 12, 2022 email was filed on the Docket on January 27, 2023. [*See* Dckt. No. 22-9].

## RELEVANT PROCEDURAL BACKGROUND

### A. The Filing of the Summons and Complaint

The instant action was filed on May 16, 2022. [Dckt. No. 1]. The initial Complaint asserts six (6) causes of action:

FIRST: Unpaid minimum wages under the FLSA;

SECOND: Unpaid minimum wages under the NYLL;

THIRD: Unpaid overtime wages under the FLSA;

FOURTH: Unpaid overtime wages under the NYLL;

FIFTH: Failure to provide wage notices under the NYLL; and

SIXTH: Failure to provide wage statements under the NYLL.

[*Id*. at ¶¶ 40-66].

### B. Defendants' Contemplated Motion to Dismiss

On November 15, 2022, Defendant filed a three (3) page, pre-motion conference letter, requesting leave to file a partial motion to dismiss Plaintiffs' second, fourth and fifth claims. [Dckt. No. 17].

On November 22, 2022, Plaintiffs filed a letter in response [Dckt. No. 18], noting that, *inter alia;* (i) Defendant's own records evidence a failure to pay employees for all "on-call" and "overtime" hours worked; and (ii) Plaintiffs' NYLL claims are not premised on § 651(5), but rather on the provisions contained in NYLL § 190 *et seq.* [*See id*.].

On August 10, 2023, following two (2) unsuccessful virtual settlement conferences on March 23, 2023 [*see* 03/23/2023 Minute Entry] and July 13, 2023 [*see* 07/14/2023 Minute Entry], Defendant served the undersigned their Motion to Dismiss.

## LEGAL STANDARD

### I.   Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 2022 WL 667606, at *5 (S.D.N.Y. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely." *Id*.  A claim has facial plausibility when the plaintiff "'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Snowbridge Advisors*, 2022 WL 667606 at *5 (S.D.N.Y. 2022) (citing *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I.   Plaintiffs' Second and Fourth Claims are Sufficiently Pled

Plaintiffs contend that Defendant violated the overtime, wage statement and wage notice provisions of the NYLL. [*Compl.* at ¶¶ 30-66]. In response, Defendant asserts that H+H is exempt from liability under the NYLL because § 651(5) exempts from its wage requirements those individuals employed "by a federal, state or municipal government or political subdivision thereof." [Partial Motion to Dismiss at p. 3]. In support of its position, Defendant cites numerous cases establishing that H+H constitutes a "political subdivision" within the meaning of § 651(5),

and is thereby exempt from liability under the NYLL. [*Id.*] (citing *Cromwell v. N.Y.C. Health & Hosps. Corp.*, 983 F. Supp. 2d 269 (S.D.N.Y. 2013); *Ali v. N.Y.C. Health & Hosps. Corp.*, 2013 WL 1195794, at *2 (S.D.N.Y. 2013); *Drayton v. MetroPlus Health Plan, Inc.*, 791 F. Supp. 2d 343 (S.D.N.Y. 2011).

Contrary to Defendant's understanding, Plaintiffs' second and fourth claims are not premised on § 651(5), but rather on the provisions contained in NYLL § 190 *et seq*.

§ 190 of the NYLL defines "employee" and "employer" as follows:

"Employee" means any person employed for hire by an employer in any employment.

"Employer" includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service. The term "employer" shall not include a governmental agency.

NYLL § 190(2)-(3).

Of critical importance, § 190 does not provide an exemption for "political subdivisions" of the State of New York. (*Cf.* NYLL § 651(5) *with* NYLL § 190). Accordingly, regardless of whether H+H is considered a political subdivision or not, it is not an exempt entity under § 190 because it does not constitute a governmental agency. *See Humphreys v. New York City Health & Hosps. Corp.*, 2018 WL 3849836, at *6 (S.D.N.Y. 2018); *Day v. Summit Sec. Servs. Inc.*, 53 Misc. 3d 1057, 1064 (N.Y. Sup. Ct. 2016), *aff'd*, 72 N.Y.S.3d 88 (1st Dept. 2018).

Accordingly, Defendant's contemplated motion to dismiss Plaintiffs' Second, Fourth and Fifth NYLL claims must fail.

## II. Assuming, *Arguendo*, the Partial Motion to Dismiss is Granted, Plaintiffs Should be Granted Leave to Replead

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citation omitted). *See also* Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

12

While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).

Assuming, *arguendo*, the Partial Motion to Dismiss is granted, Plaintiffs respectfully requests an opportunity to replead their claims. *See Edelman v. United States Gov't*, 2020 WL 7123175, at *18 (E.D.N.Y. 2020) (granting leave to replead third amended complaint); *Sullivan v. Doctor's Assocs. LLC*, 2020 WL 2319295, at *7 (S.D.N.Y. 2020) (same); *Reiner v. Teladoc Health, Inc.*, 2020 WL 7028638, at *6 (S.D.N.Y. 2020) (holding that, "[a]lthough [plaintiffs] have already amended their complaint, they have not yet had an opportunity to do so in response to an opinion of the Court. Accordingly, the Court does not conclude that allowing them to amend once again would be futile.")

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the Partial Motion to Dismiss be denied, in addition to any such other or further relief as the Court might deem proper or just.

Dated:  New York, New York
        September 7, 2023

By:     */s/ Jason Mizrahi, Esq.*
        Levin-Epstein & Associates, P.C.
        Jason Mizrahi, Esq.
        Joshua D. Levin-Epstein, Esq.
        60 East 42nd Street, Suite 4700
        New York, NY 10165
        Tel. No.: (212) 792-0048
        Email: Jason@levinepstein.com
        *Attorneys for Plaintiffs*